## Churchill *vs.* Sanborn, App't.

The act of January 3d, 1829, provided that the payment of fines for neglect of military duty should be enforced by a complaint against the offender, and by a warrant returnable before a magistrate, upon which a hearing should be had. The 16th section provided that parents, &c., should be liable for fines incurred by persons under their care, and should be proceeded against in the manner provided by the act.

*Held*, that this section was not inconsistent with, and was not repealed by, the act of July 6th, 1833, which altered the mode of proceeding in such cases, and provided that fines should be levied by distress and sale of the delinquent's goods and chattels, by warrant under the hand and seal of the captain of the company, although the act did not provide that any previous notice should be given to the parent.

Where a minor son, under the care of his father, incurs a penalty for non-appearance upon parade, the fine may be levied by distress and sale of the father's goods and chattels.

Trespass, brought before a justice of the peace, for taking and carrying away two ploughs and one harrow, the property of the plaintiff.

The defendant was the captain of the fifth company of infantry, in the 33d regiment of New-Hampshire militia.

One Thomas L. Churchill, being liable to do military duty in said company, and being duly notified and warned to attend a parade of the company for military duty, did unnecessarily neglect to appear, and thereby incurred a fine of two dollars. The defendant, as captain of the company, issued his warrant of distress in due form, against the plaintiff, as father of said Thomas. The clerk of the company, by virtue of the warrant, duly took and sold the ploughs and harrow.

The defendant pleaded a special plea of justification before the magistrate, and among other things alleged that said Thomas was, at the time he incurred the fine, a minor, above the age of eighteen years, and under the age of twenty-one years, and under the care of his parent, the plaintiff—that he continued to reside within the bounds of the company, and liable to do military duty therein—and, as such infant, was under the care of his parent, from the time he was

warned till long after the property was sold—that he incurred the fine of two dollars, for the use of the company ; and the plaintiff, as parent of said Thomas, and having him under his care as aforesaid, became liable to pay the fine.

It was not alleged in the plea that the plaintiff had notice of the fine, or of the warning to his son, before the warrant was issued.

To this plea the plaintiff demurred generally, and the defendant joined in demurrer. The justice rendered judgment for the plaintiff, from which the defendant appealed.

*Hobbs*, for the defendant. The only question is, whether a parent can be liable for a fine incurred by his minor son for neglect of military duty. If he be liable generally, are the allegations in this plea sufficient ?

The 16th section of the act of 1829 is not expressly repealed by the act of July 6th, 1833. If repealed at all, it is only by implication ; and we say it is not repealed by implication, for the act of 1833 is not inconsistent, in this particular, with the act of 1829. 3 *Mass.* 17 ; 17 *Mass.* 383 ; 1 *Pick.* 248.

*Hale*, for the plaintiff. The 16th section of the act of 1829 is repealed virtually by the subsequent legislation upon the same subject. The plaintiff had no notice of these proceedings, and the act of 1829 required notice to the parent. This was the sole liability of the parent ; and the law remained thus until the passage of the act of 1833, which has no provision making a parent liable. This repeals the former statute, because it alters the mode of collecting the fine ; and the legislature intended to exempt parents and guardians from all responsibility in such cases. The act speaks of " the company to which the *offender* belongs." This does not mean the parent ; but the meaning of the word is confined by the rest of the section, which shows that no person is meant but a member of the company.

Churchill *v.* Sanborn.

Even if this section be not repealed, we say, therefore, that the parent is not included in its provisions. But all the subsequent legislation shows clearly that in leaving out all responsibility of the parent, the legislature did not mean to continue his liability, and the two statutes are virtually inconsistent with each other.

We further object, that no notice was given to the plaintiff of the liability of his son. These proceedings, if legal, affected his rights, and he should have had an opportunity to app·ar and contest his liability. By the act of 1829, the parent could not be liable, unless upon a complaint and notice in due form; and if the 16th section be not repealed, it stands valid to all intents and purposes, and the parent cannot be now holden, unless upon such a complaint as is required by the act. It does not follow, because he *might* be liable upon notice, that he could be liable without any notice whatever.

GILCHRIST, J. The 16th section of the act of January 3d, 1829, *N. H. Laws* 414, (*Ed. of* 1830,) provides, that " parents, &c., shall be liable for all fines and penalties incurred by persons under their care : and may, at the choice of the person prosecuting therefor, be proceeded against in the manner provided by this act, against other delinquents."

In the 17th section it is provided, that if any non-commissioned officer or private shall be guilty of any offence, &c., it shall be the duty of the clerk of " the company to which *such offender* belongs," to make a complaint in the manner provided by the act.

It is argued for the plaintiff, that the words, *such offender*, relate to the private alone, and not to the parent. This is true of the particular clause in which the words appear. But the parent, although not an offender himself, is made liable for the neglect of another person, who is an offender. The object of the 16th section is, not to punish the parent for neglect of military duty in his own person, but to furnish

some security for the payment of the fine, beyond that which is afforded by the arrest of the minor, who, in general, is not possessed of property. The construction contended for by the plaintiff would make this section entirely nugatory, for the parent would not be liable at all.

But, although the parent is not spoken of in the act of 1829, as an *offender*, he is, in the 16th section, classed with *delinquents*. He is to be proceeded against " in the manner provided by this act against *other delinquents*." And in some cases he is a delinquent. If his son incur a fine, and the parent neglect to pay it, upon proper proceedings had, he will be delinquent until the fine be discharged. He is a delinquent in the sense applicable to all persons, who, being liable for the default of another, neglect to discharge that liability.

The act of July 6th, 1833, repealed all the sections of the act of 1829 which prescribed the mode of collecting the fines. That mode was by complaint and warrant, like those adopted in criminal proceedings, upon which the party was brought before a magistrate, and a trial was had, as in other cases of complaints. The party had due notice of the complaint, and had an opportunity to make his defence. But the act of 1833 provided a much more expeditious remedy. Upon a record having been made of the fine, by the clerk of the company to which the delinquent belonged, it is to be levied by distress and sale of his goods, by warrant under the hand and seal of the captain of the company. Where the supposed delinquent is not liable, his only remedy is by an action of trespass.

The words of the fourth section of this act, which relates to the mode of collecting the fine, would, if considered by themselves, seem to refer solely to the private himself. " The company to which the *delinquent* belongs", is mentioned. The fine is to be levied " by distress and the sale of the *delinquent's* goods and chattels," by warrant under the hand and seal of the captain of " the company to which *such de-*

Churchill v. Sanborn.

*linquent* belongs." But the 16th section of the act of 1829 remains unrepealed. The 10th section of the act of 1833 repeals only "the 1st, 2d, 3d, 17th, 18th, 19th, 20th and 21st sections" of the act of 1829, "and all other acts and parts of acts inconsistent with this act." Now, although the subject was not considered with that careful attention which all legislation demands, so that there is an obscurity in the intention of the legislature, which has been the cause of the present litigation, still we do not perceive any thing in the 16th section of the act of 1829 inconsistent with the act of 1833. The object of the latter act was merely to alter the mode of collecting fines, and not to relieve the parent from his liability for the default of his son. That liability is to be enforced in a different manner, but it still exists. It is not a reason why the parent should be excused from liability, because of an alteration in the mode of proceeding, from a complaint and warrant to a more summary mode. There is as much reason for continuing this liability, whether one or the other mode be adopted. The present more summary mode does not furnish any greater security for the ultimate collection of the fine, than was had where its payment was to be enforced by a complaint and warrant. That there is no inconsistency between the 16th section, and the act of 1833, will clearly appear, if that section be read as a part of the act of 1833; and if it be thus read, it will be seen that all its provisions apply as well to the act of 1833 as to the act of 1829. By the 16th section, the parent is to be proceeded against "in the manner provided by this act." This may as well mean the latter, as the former acts. And if the legislature had intended expressly to provide for the continuance of the liability of the parent, they could not have more effectually accomplished their object, than by inserting the 16th section of the act of 1829, as a section in the act of 1833.

It is argued, as conclusive evidence of an inconsistency between the two acts, that the act of 1833 does not require any previous notice to the parent, of his liability. This re-

sults from the alteration in the mode of proceeding. Under the act of 1829 this was by a complaint and warrant in all cases. Under the present statute, the mode is by a warrant of distress in all cases. The former mode gave the private notice. The present mode does not in any case. The objection, if it exist at all, applies equally to the case of the soldier and to that of the parent. It applies to the whole act, and amounts to a question, whether the alteration in the proceedings be an expedient and proper alteration, with which we have nothing to do. The case of the parent may be a hard one, but it is no harder than that of the soldier. They were placed upon the same footing by the act of 1829, and they are upon equal footing by the act of 1833. Experience had probably convinced the legislature that the militia system could not be kept up, and the performance of military duty enforced, unless a more summary mode of collecting the fines were adopted ; and that mode, when determined upon, was applied to all cases. We think, therefore, that this objection raises only the question of expediency, which does not come within our province, whether the legislature should not have provided for some notice to the parent, of his liability, before the warrant of distress was allowed to issue, and that it does not show any inconsistency between the two acts.

This is the only question raised at the bar in this case. The 4th section of the act of 1833 provides that all fines, &c. " of which a record shall have been made by the clerk of the company," shall be levied by distress, &c. It is admitted, in the argument of the counsel for the plaintiff, that a record of the fine was made, and no exception is taken, because that fact is not stated in the plea. The judgment of the court is, that the plea is a good answer to the action.

*Demurrer overruled.*